UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   NOT FOR PUBLICATION

CIE SHARP, MICHAEL SHARP,
SHARP REALTY LLC,

               Plaintiffs,

-against-      **MEMORANDUM AND ORDER**

74 ELDERT FUNDING INC., 74 ELDERT LLC,      16-cv-02491 (AMD)(RLM)
KALMAN SINAY, MORELL I. BERKOWITZ,
ESQ., GALLET DREYER & BERKEY LLP,
MICHAEL LYNCH & ASSOCIATES,
PROSPECT MANAGEMENT INC., FREDRICK
WILHELM, BRUCE CAPUTO, GALLET DREYER
& BERKY LLP, GREGG STAR, DAVID RENALDI,
74 ELDERT FUNDING I, INC., KRISHNAN CHITTUR,
JUDGE DAVID I. SCHMIDT, JUDGE CAROLYN
DEMAREST, JUDGE ANN T. PFAU and JUDGE
MARTIN SOLOMON,

               Defendants.
-------------------------------------------------------------X
**ANN DONNELLY**, United States District Judge:

On May 16, 2016, plaintiffs Cie Sharp, Michael Sharp and Sharp Realty LLC, appearing *pro se*, filed this action relating to a disputed real estate transaction. The defendants include private parties connected to the real estate transaction at issue and judges who presided over the disputed real estate transaction in state court. The plaintiffs paid the filing fee to commence this action. As set forth below, the plaintiffs' complaint is dismissed because it is without merit, and because this Court does not have subject matter jurisdiction over its claims.

## BACKGROUND

In their 159 page, 406 paragraph complaint, the plaintiffs complain of "real estate fraud through misuse of the judicial process." (Complaint (ECF 1), at p. 3.) Specifically, the plaintiffs claim that they owned an apartment building in Bushwick, Brooklyn, and that they were defrauded out of their ownership by a group of defendants acting under 74 Eldert LLC and 74 Eldert Funding (collectively, "Eldert"). The plaintiffs allege that the Eldert defendants used false pretenses to get

1

Cie Sharp's mother, Linda Sharp, to sign a document that purported to transfer the ownership of the building. (*Id.* ¶ 18.) The Eldert defendants then brought an action in state court seeking to enforce the purported contract for the sale of the building, with specific performance as a remedy. (*Id.* ¶ 44.) On May 9, 2013, Judge Ann T. Pfau issued an order conveying the property to the Eldert defendants by Sheriff's deed.[1] (*Id.* at p. 3, ¶ 19.)

In this complaint, the plaintiffs allege that in the state court action, the private defendants[2] perpetrated a "fraud-upon-the-court by material misrepresentations." (*Id.* ¶ 20.) Further, they allege that the state court judges who presided over the case deprived them of their rights to due process. (*Id.* ¶¶ 42, 43 ("[T]he judges acted maliciously to violate the sharps (*sic*) right to be heard by depriving its entitlement to discovery and have a hearing where plaintiff could be confronted and a defense could be asserted. Thus, the misconduct of the judges clearly appears upon a review of the record to be a willful and wanton deprivation of constitutional rights."). The plaintiffs assert claims under 42 U.S.C. §§ 1981, 1983, the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and state law. Based on these allegations, the plaintiffs invoke federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Notably, this is not the first time that the plaintiffs have attempted to litigate this real estate transaction in federal court. The plaintiffs were defendants in the underlying state court action that they claim involved fraudulent litigation activity, and tried to remove that case to federal court on October 25, 2012. (*See 74 Eldert LLC v. Sharp Realty, et al.*, S.D.N.Y. Docket No. 12 Civ. 7967,

---

[1] This court order apparently enforced a settlement agreement that had been reached in court among the parties. According to the complaint, at an October 10, 2012 hearing in Kings County, the Sharp's lawyers agreed by stipulation to execute the sale and "and to restrain the Sharps from asserting or enjoying any of their rights of being owners of private property to sell, collect revenue, and to obtain financing." (*Id.* ¶ 44.) The plaintiffs claim that this stipulation was "fraudulently produced" and was not signed by Michael and Cie Sharp. (*Id.* ¶ 20.)

[2] The private defendants include 74 Eldert LLC, 74 Eldert Funding, Inc., and several law firms and lawyers, including those who represented the plaintiffs in the state court action. (*Id.* ¶¶ 3-13.)

2

ECF 1.) In support of removal, the plaintiffs argued that 74 Eldert LLC, the state court, and defendants' former counsel violated the plaintiffs' due process rights as well as certain provisions of the RICO statute, and that they had been discriminated against on the basis of race, ethnicity, disability, "or other bias" under §§ 1981-1985. (*See id.*, ECF 4, at 2.) In other words, they attempted to remove the underlying state court action to federal court based on the same arguments and federal claims that they assert in their present complaint.

The Honorable Paul Oetken of the Southern District of New York found that there was no basis for federal jurisdiction over the case, because "[t]he action that Defendants removed . . . is a contract dispute that does not implicate a violation of their federal rights. Defendants' civil rights and RICO claims relate to the actions of the plaintiff, the state court judge, and their counsel during the state court proceedings. Such allegations do not transform a state law contract matter into a federal question." *(See id.,* ECF 4, at 3.) Judge Oetken remanded the case to state court.[3]

Over three years after Judge Oetken's decision, the plaintiffs are yet again trying to litigate the very same case in federal court. For the reasons set forth below, I find that the complaint does not state any meritorious claims, and that this Court does not have subject matter jurisdiction over this action.

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] On June 20, 2013, the plaintiffs again attempted to remove the state court action to federal court, this time to the Eastern District of New York. Judge Joseph Bianco remanded to state court on July 2, 2013. *See 74 Eldert LLC v. Sharp Realty LLC, et al.*, E.D.N.Y. Docket No. 13 CVB 3502 (JFB)(ETB).

At the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. When the plaintiff is *pro se*, a court must "liberally" construe the complaint "to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), and must hold it "to less stringent standards than formal pleadings drafted by lawyers." *Nguyen v. Ridgewood Sav. Bank*, 66 F.Supp.3d 299, 303 (E.D.N.Y. 2014) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). This "liberal treatment," however, does not "exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F.Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal citation and quotation marks omitted). Further, a court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist," *Molina v. New York*, 956 F.Supp. 257, 259 (E.D.N.Y. 1995), and "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi v. Postgraduate Center for Mental Health*, No. 10-cv-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

Even when a plaintiff has paid the Court's filing fee, a district court may dismiss the action, *sua sponte*, if it determines that the action is frivolous, *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 363, 363-64 (2d Cir. 2000); *see also Hawkins-El III v. AIG Federal Savings Banks*, 334 F. App'x 394, 395 (2d Cir. June 18, 2009) (affirming district court's *sua sponte* dismissal of fee-paid complaint as frivolous), or that the Court lacks subject matter jurisdiction over the matter. Fed. R. Civ. P. 12(h)(3); *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001); *see also Zahl v. Kosovsky*, 471 Fed.Appx. 34, 37 (2d Cir. 2012) ("A district court has inherent authority to dismiss meritless claims *sua sponte*, even where a plaintiff has paid the filing fee."); *Zapolski v. Federal Republic of Germany*, 425 Fed.Appx. 5, 5 (2d Cir. 2011) ("With respect to the

dismissal based upon appellants' failure to state a claim, a court has the inherent authority to dismiss meritless claims."). A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.*, if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); *see also Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998); *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) ("[T]he district court has subject matter jurisdiction unless the purported federal claim is clearly immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.") (internal quotation marks and citations omitted).

At the outset, the Court will not address any claims brought by the corporate plaintiff, Sharp Realty LLC. Although federal law affords parties a statutory right to "plead and conduct their own cases," 28 U.S.C. §1654, that statute does not permit "unlicensed laymen to represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). Therefore, a corporation may only appear in federal court through licensed counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) ("As a corporation, appellant, Galaxiworld, could only appear with counsel."); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self . . . a lay person may not represent a corporation or a partnership."). *Pro se* plaintiffs Cie Sharp and Michael Sharp cannot represent Sharp Realty LLC. Accordingly, any claims brought on behalf of Sharp Realty LLC are dismissed without prejudice.

## DISCUSSION

As set forth below, the plaintiffs' claims against the judicial defendants are meritless, and are dismissed. Further, the plaintiffs do not state a colorable claim under 42 U.S.C. § 1981, 42 U.S.C. §1983, or the RICO statute, the asserted federal causes of action, against any of the defendants. Finally, this Court does not have subject matter jurisdiction over this action pursuant to the *Rooker-Feldman* doctrine. For these reasons, the plaintiffs' complaint is dismissed.

### A. Judicial Immunity

First, the plaintiffs allege that Judges David I. Schmidt, Carolyn Demarest, Ann T. Pfau and Martin M. Solomon committed "overt acts of bad rulings and decisions" in the state court actions related to the disputed real estate transaction. (Compl. ¶ 312.) However, "[i]t is well-settled that judges acting within their official capacity enjoy absolute immunity from suit 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Tsitrin v. Vitaliano*, No. 11-CV-5589 (NGG), 2012 WL 5289537, at *2 (E.D.N.Y. Oct. 23, 2012) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles v. Waco*, 502 U.S. 9, 11-13 (1991) (*per curiam*) (internal citations omitted); *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Moreover, in cases of judicial immunity, a Court may dismiss a complaint *sua sponte*, without affording a hearing or other notice of dismissal. *See Tapp v. Champagne*, 164 F. App'x 106, 107 (2d Cir. 2006) (summary order) (affirming *sua sponte* dismissal of § 1983 claims against judges protected by absolute immunity); *Rolle v. Berkowitz*, No. 03 Civ. 7120, 2004 WL 287678, at *2 (S.D.N.Y. Feb. 11, 2004) (dismissing *pro se* plaintiff's claims against judge *sua sponte* based on judicial immunity).

6

Here, the plaintiffs' allegations relate to judicial actions taken by various state court judges who presided over litigation concerning the contested sale of the apartment building at issue. (*See, e.g.*, Compl. at 8, 49, 68-74, 109-115.) These judicial defendants have absolute judicial immunity for actions taken in their official capacity; that the plaintiffs' seek injunctive and declaratory relief, in addition to damages, does not alter the Court's conclusion. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (*per curiam*) ("judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (internal citation omitted). Therefore, the plaintiffs do not state a colorable cause of action against any of the judicial defendants, and these claims are dismissed.

B. **Section 1981**

To state a claim pursuant to § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the statutorily enumerated activities. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see also White v. St. Joseph's Hospital*, 369 F. App'x 225, 226–27 (2d Cir. 2010). The enumerated activities include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. The complaint includes no allegation that race played any role in the underlying events related to the real estate transaction, let alone any allegation that the defendants had an intent to discriminate against Michael and Cie Sharp on the basis of race. The plaintiffs therefore fail to state a colorable claim under § 1981.

B. **Section 1983**

A claim for relief under § 1983 must allege facts showing deprivation under the color of state law "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Section 1983 constrains only conduct that is "fairly attributable to the State." *Am. Mfrs. Mut. Ins.*

7

*Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Private conduct—no matter how discriminatory or wrongful—is generally beyond the reach of §1983. *Id.* (quotation marks omitted); *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). Here, the private defendants are companies, lawyers (including the plaintiffs' former counsel) and law firms allegedly connected to the sale of the apartment building. The plaintiffs' conclusory allegations that the private defendants "worked jointly" or "acted in collusion" with judges, (Compl. at 10-12), are insufficient to state a claim for state action under § 1983. *See Ciambrello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.") (internal citation omitted); *see also Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (plaintiff's "conclusory allegation" that "Summit, a private entity, acted in concert with the town and its agents" was insufficient to state a § 1983 action against Summit). Therefore, plaintiffs have failed to allege that any of the private defendants acted under color of state law for purposes of § 1983.

## D. RICO

It is unlawful under the RICO statute "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In other words, a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *First Capital*, 385 F.3d at 173 (quoting *United States v. Turkette*, 542 U.S. 576, 583 (1981)). "[C]laims under RICO are subject to a high level of scrutiny due to their potential for abuse by civil litigants." *Maltezos v. Marine Terrace Apts.*, No. 87 Civ. 7347, 1990 WL 52112 at *2 (S.D.N.Y. Apr. 13, 1990).

Here, the plaintiffs allege that the defendants were engaged in a "widespread criminal enterprise," (*id.* at p. 3), that their lawyers were colluding with their adversaries in the state court action (*id.* at ¶¶ 21, 24), and that the judicial defendants were "working in concert" with the private defendants. (*Id.* ¶ 323.) However, they have not alleged that the defendants' alleged enterprise was an "ongoing organization, formal or informal," or that "the various associates" of the alleged enterprise functioned "as a continuing unit." *First Capital*, 385 F.3d at 174 (internal citations omitted). Nor have they provided information regarding any "hierarchy, organization, and activities" of the alleged enterprise from which the Court could conclude that its "members functioned as a unit." *Id.* (internal quotation marks and citations omitted). Therefore, the plaintiffs have not raised a colorable claim that the defendants were engaged in a RICO enterprise. *See id.* at 174-75; *see also Morin v. Trupin*, 835 F. Supp. 126, 132-36 (S.D.N.Y. 1993) (attorneys do not become part of a RICO enterprise or otherwise risk liability for aiding and abetting a RICO enterprise merely by providing legal representation).

### E. Rooker-Feldman Doctrine

The plaintiffs admit that in the current action, they are "contesting past rulings in state court" that they claim were "motivated to serve an illegitimate and corrupt purpose and constituted a fraud-upon the court." (Compl. ¶ 330; *see also* ¶ 39 ("the court acted in plain and manifest error

by arbitrarily and capriciously ruling a breach of contract occurred.") Under the *Rooker-Feldman* doctrine, however, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine applies when (1) the federal court plaintiff has lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites the federal court to review and reject that judgment; and (4) the state court judgment was rendered prior to the commencement of proceedings in the district court. *Id.* at 85; *see also Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). Despite their conclusory argument to the contrary, the plaintiffs are clearly asking this Court to review and reject rulings by state court judges in state court proceedings. *See, e.g.*, Compl. at p. 3 (complaining that as a result of a "judicial order rendered on May 9, 2013," the Sharps "sustain[ed] a financial loss of about two million"), p. 7 ("the disputed matters in controversy involve judgment in state court"), ¶ 32 (complaining that "the state court consistently neglected and refused to allow an evidentiary hearing to determine if the October 12, 2012 stipulation was the product of fraud"); ¶ 281 (complaining about Judge Pfau's May 9, 2013 order).[4] This Court does not have subject matter jurisdiction over the claims asserted in the plaintiffs' complaint. *See Zahl v. Kosovksy*, 471 Fed.Appx. 34, 34 (2d Cir. 2012) (affirming *sua sponte* dismissal by district court as it had "correctly applied the *Rooker-Feldman* doctrine in holding that it lacked subject matter jurisdiction over the claims in the complaint that effectively sought redress of Zahl's alleged injuries caused by state court decisions issued in connection with his completed matrimonial proceedings.").

---

[4] The plaintiff claims that he was deprived of his constitutional rights in the state court proceedings, but does not set forth any facts or legal authority as to why he was prevented from litigating these constitutional claims in the state courts. *See Zahl v. Kosovksy*, 471 Fed.Appx. 34, 34 (2d Cir. 2012) (affirming *sua sponte* dismissal based on *Rooker-Feldman* doctrine where plaintiff "sets forth no facts or legal authority as to why he was prevented from litigating his constitutional claims in state court.").

## CONCLUSION

This Court lacks subject matter jurisdiction over the plaintiffs' claims under the *Rooker-Feldman* doctrine and because the plaintiffs do not raise any colorable federal claim against any defendant. Further, pursuant to 28 U.S.C. § 1367(c)(3), and upon consideration of the relevant factors, *i.e.*, judicial economy, convenience, and fairness, the Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims. *See Kolari v. New York-Presbyterian Hospital*, 455 F. 3d 118, 122 (2d Cir. 2006).

While a *pro se* plaintiff should ordinarily be given an opportunity to amend his complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations omitted), leave to amend need not be granted where it is clear from the plaintiff's submission that he cannot state a plausible claim for relief. *See, e.g., Ashmore v. Prus*, 510 Fed. Appx. 47, 49 (2d Cir. 2013) (finding that leave to amend is futile where "barriers to relief" for plaintiff's claims "cannot be surmounted by reframing the complaint"), *cert. denied*, 133 S.Ct. 2038, 185 L.Ed.2d 887 (2013). Here, it is clear that the plaintiffs have raised only state law causes of action and are asking this Court to review and reject state court decisions. As these defects cannot be cured by amendment, leave to amend is denied.

Although the plaintiffs have paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment dismissing this action and to close this case.

**SO ORDERED.**

/s/Ann Donnelly
_____
ANN DONNELLY
United States District Judge

Dated: Brooklyn, New York
 July 12, 2016